IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELISSA BAILEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 04-1459-GMS |
| | ) | Cr. A. No. 00-23-GMS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

_____

Melissa Bailey. *Pro se* Petitioner.

Keith M. Rosen, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

_____

March 24, 2008
Wilmington, Delaware

SLEET, Chief Judge

## I. INTRODUCTION

Petitioner Melissa Bailey filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (D.I. 212.) The Government filed its answer. (D.I. 217.) For the reasons discussed, the court will deny Bailey's § 2255 motion without holding an evidentiary hearing.

## II. PROCEDURAL AND FACTUAL BACKGROUND

In 1999, Bailey was the head teller of a PNC Bank branch located in Bear, Delaware. As the head teller, Bailey controlled the cash flow in and out of the bank, and she had access to a number of vaults within in the bank's main vault. From January 1999 through November 1999, Bailey embezzled cash from the bank on multiple occasions. She removed bundles of cash, typically containing twenty dollar bills, from the bank vaults and transported the cash to her home in Elkton, Maryland. On average, each bundle contained approximately $4,800.00. In most instances, Beily gave the bundles of money to her husband to support his ongoing drug addiction. (D.I. 217 at pp. 2-4.)

To maintain the appearance that no money had been taken, Bailey created fake bundles of $20 bills by manufacturing a bundle that contained one-dollar bills (instead of $20s) with a $20 bill on either end, so that a fake bundle would look like an intact bundle of $20s. Bailey knew that the fake bundles would not be discovered during routine bank audits because the auditors would not hand count the $20 bundles. *Id.*

During the latter part of 1999, the PNC Bank branch where Bailey was employed began receiving additional cash to keep on hand in case of excessive customer draws prompted by any

1

"Y2K" panic. Bailey was responsible for accounting for this cash, which was kept in a separate vault within the main vault. Bailey maintained on her records that this Y2K vault contained the requisite $400,000 at all times. In fact, she switched the fake bundles from her vault with the intact bundles from Y2K vault. As a result, as of January 14, 2000, the Y2K vault contained the difference between $400,000 and the amount Bailey had previously embezzled. *Id.*

In December 1999, Bailey and John Walter Trala ("Trala") agreed to plan and commit a robbery of the PNC Bank branch where Bailey worked in order to prevent the detection of Bailey's prior embezzlements. During December 1999 and January 2000, Bailey and Trala discussed how the robbery might occur. Bailey and Trala also discussed the location of various monies in the vaults at the PNC Bank. *Id.*

On January 14, 2000, Trala entered the PNC Bank and robbed the bank of the money remaining in the Y2K vault. During the course of the robbery, Trala brandished a handgun and used that handgun to intimidate and assault Brian Warnock, an employee of the bank, by placing the handgun against Warnock's head and back. Trala further trapped Bailey and Warnock inside the bank vault as he escaped. As he exited the bank, Trala pointed his gun at another employee, Lillian Foley, who was entering the bank at the time. *Id.*

In the days following the bank robbery, Bailey received approximately $70,000 of the cash stolen during the robbery from Trala. A search warrant executed at Bailey's home on February 10, 2000 uncovered approximately $50,000 hidden in Bailey's freezer. An addtional $4,800 was discovered in other parts of the house. *Id.*

Bailey admitted her involvement in the embezzlement and robbery to the FBI. In a written statement, Bailey stated that she and Trala planned the robbery that occurred on January

2

14, 2000; that she had previously embezzled $150,000 from the bank and that she planned the robbery to cover up the embezzlement and to gain other proceeds from the bank; that Trala was the perpetrator of the robbery; and that she received $70,000 for her role in the robbery. *Id.*

A federal grand jury indicted Bailey on March 13, 2000, charging her with various bank robbery and embezzlement charges. On June 29, 2000, Bailey entered a plea of guilty to one count of conspiracy to commit bank robbery in violation of U.S.C. §§ 371 and 2113 (Count II) and one count of embezzlement by a bank employee in violation of 18 U.S.C. § 656 (Count IV). The court sentenced Bailey to a term of 60 months imprisonment on Count II, and 87 months imprisonment on Count IV, with the sentences to run concurrently for a combined total sentence of 87 months. During the sentencing proceeding, the court denied the government's request for a section 5K1.1 downward departure based on Bailey's cooperation against her co-defendant, Trala, and also denied the defense motion for downward departure due to family circumstances. (D.I. 159.)

Bailey appealed her conviction and sentence, arguing that: (1) trial counsel was ineffective for failing to object to the determination that she embezzled $150,000 from the bank; and (2) the court erred in denying the Government's departure motion. The Third Circuit Court of Appeals affirmed Bailey's conviction and sentence on July 21, 2004. The Third Circuit explained that, although, in general, it will not entertain a defendant's claim of ineffective assistance of counsel on direct appeal, in this case, the record was sufficient to resolve Bailey's claim of ineffective assistance. The Third Circuit then analyzed the claim under *Strickland v. Washington*, 466 U.S. 668 (1984), and denied the claim as meritless. As for Bailey's second claim, the Third Circuit concluded that it lacked jurisdiction to review the court's discretionary

3

decision to not depart, but to the extent Bailey was challenging the court's analysis of the evidence, the claim was meritless. (D.I. 210, *U.S.A. v. Bailey*, No. 02-1736 (3d Cir. July 21, 2004).)

Bailey timely filed the pending § 2255 motion in November 2004, and the Government filed an answer. Bailey's § 2255 motion is ready for review.

### III. EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. However, the Third Circuit has expressed a preference for an evidentiary hearing when a "defendant is convicted of a crime and alleges that his lawyer failed to appeal the conviction, and there is a potential factual dispute on this issue, the defendant is entitled to a hearing before the District Court to prove that he made the request and that the lawyer failed to honor it." *Solis v. United States*, 252 F.3d 289, 295 (3d Cir. 2001).

As explained below, the record conclusively demonstrates that Bailey is not entitled to relief for any of her claims. Although Bailey asserts ineffective assistance of counsel, she does not allege that counsel failed to file an appeal despite her request to do so. Accordingly, the court concludes that an evidentiary hearing is not warranted.

### IV. DISCUSSION

Bailey asserts the following grounds for relief: (1) counsel provided ineffective assistance by failing to object to the inclusion of the victim impact statement in the Pre-Sentence Report

("PSR"); (2) counsel performed ineffectively by failing to object to enhancement of Bailey's sentence for Count II pursuant to the firearm adjustment; (3) counsel provided ineffective assistance by failing to properly present Bailey's role as a parent at sentencing; and (4) the six-point sentence firearm enhancement violated the Sixth Amendment because the factors leading to the enhancement were not admitted or found by a jury. The Government contends that the court should deny Bailey's § 2255 motion in its entirety because the claims are either meritless or not cognizable on habeas review. The court will address the claims in seriatim.

### A. Ineffective Assistance of Counsel Claims

A federal prisoner's claim for ineffective assistance of counsel is properly raised for the first time in federal district court as a § 2255 motion rather than on direct appeal. *See United States v. Garth,* 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera,* 104 F.3d 566, 570 (3d Cir. 1996). To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). The first prong of the *Strickland* test requires the petitioner to demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.*; *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir. 2002). The petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. When evaluating the allegations under this prong, a court must defer to the counsel's reasonable strategic decisions, and the mere fact that the strategic decision was unsuccessful does not make such a decision unreasonable. *Id.* Generally, the petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 688-89

(internal citation omitted).

The second prong of the *Strickland* test requires the petitioner to affirmatively show that counsel's deficient performance prejudiced his case. *Strickland,* 466 U.S. at 692-93. To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687-88; *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir. 2002).

### 1. Claim one: counsel's failure to object to victim impact statement

The victim impact statement included in the PSR stated that: (1) the bank suffered a loss in the amount of $400,000; (2) the victim employee Brian Warnock felt victimized both by Bailey's betrayal as well as by the victim bank, and he suffered tremendous stress as a result; and (3) the victim employee Lillian Foley also felt that Bailey had taken advantage of their friendship. (D.I. 217 at p. 6)  Bailey asserts that the victim impact statement negatively affected the outcome of her sentencing proceeding. Therefore, in claim one of her § 2255 motion, Bailey argues that trial counsel was ineffective for failing to object to the victim impact statement contained in the PSR.[1]

---

[1] After the court calculated the range of imprisonment to be 87 to 108 months, two probation officers attending the hearing noted that two revisions had been made to paragraphs 19 and 20 (victim statements) of the PSR and they wanted to ensure that Bailey and her counsel were aware of these revisions because the court had based its guidelines calculation on the revised PSR. Therefore, the court granted a five minute recess for defense counsel to discuss the revisions with Bailey. After the recess, the court asked Bailey if she objected to the pre-sentence report based upon the revisions, and she stated "no." (D.I. 159 at pp. 8-9.) The court re-iterated the importance of the guidelines calculation, and asked Bailey if she wished to review the full pre-sentence report with counsel before proceeding. Bailey responded that she did not wish to review the full report at that time. *Id.* at p. 11. Although not entirely clear, Bailey appears to base her instant ineffective assistance of counsel claim on counsel's failure to object to these revisions.

6

The court will deny this claim because Bailey cannot demonstrate that she was prejudiced by the inclusion of the victim impact statement in the PSR. First, neither the court's calculation of the sentencing guidelines range[2] nor its denial of the two motions for downward departure[3] were based on the information contained in the victim impact statement. Second, Bailey's 87 month sentence was the lowest sentence possible under the guidelines range. Third, the court's decision to sentence Bailey to 87 months was due to Bailey's role in the offense. For example,

---

[2]For example, the victim's statements were included in paragraphs 18, 19, and 20 of the PSR, but the court did not reference these paragraphs in calculating the guidelines range. (D.I. 217 at p. 6.); *See* (D.I. 159 at p. 9.) In fact, after noting that paragraphs 33 through 35 (Count II) and paragraphs 40 through 42 (Count IV) of the PSR did not recommend any additional points for the victim-related adjustment, the court calculated an adjusted offense level of 32 for Count II and an adjusted offense level of 15 for Count IV. (D.I. 159 at pp. 5-6.) However, "[b]ecause the offense level on Count IV was more than nine levels lower than that for Count II," the court only used the adjusted offense level of 32 to calculate the final offense level, and then granted a 3 point downward departure for acceptance of responsibility to end up with a total combined offense level of 29. With a criminal history category of I, and a total offense level of 29, the court calculated the range of imprisonment under the guidelines to be 87 to 108 months. (D.I. 159, at pp. 7-8)

[3]*See generally* (D.I. 159 at pp. 13-19.) Rather, the court denied the substantial assistance motion only after it considered the five factors enumerated in United States Sentencing Guideline 5K1.1 and determined that factors two, three, and four weighed against granting the motion. In discussing factors two and three, the court explained that it substantially doubted the "truthfulness, completeness, and reliability of the information provided by Bailey" during her testimony in her co-defendant's trial, because she was "confrontational and clearly lacking in remorse for her involvement in an offense that could not have taken place but for her involvement." (D.I. 159 at p.17.) As for the fourth factor, the court determined that there was no known specific risk of danger or injury to Bailey or her family caused by her assistance to the Government. *Id.* at p. 18.
The court also did not consider the victim impact statement when it denied defense counsel's motion for downward departure based on family circumstances. Instead, the court determined that downward departure would be inappropriate because Bailey's situation did not differ from the "countless number of defendants who face the same reality of having to leave their children as a result of their own criminal actions," and also because her concern over leaving her children did not overcome the choices she made in deciding to engage in criminal action. *Id.* at p. 20.

the court explicitly averred that it sentenced Bailey to 87 months of imprisonment because Bailey was clearly "the mastermind of the embezzlement scheme as well as the bank robbery," and because she "orchestrated how and when [she] would remove the money from the bank vault, and then created fake bundles to make it look like all the money was still intact." *Id.* at p. 24. The court also considered the fact that Bailey had "express[ed] little remorse for anybody . . . except [herself],"[4] and stated,

> For that reason, the court wishes to be perfectly clear, Ms. Bailey, you, yourself, made the choices that cause you to stand before me today. You had other legal and moral paths from which to choose, and you chose the path of deception in an attempt to save yourself.

(D.I. 159 at pp. 27-8.) In short, Bailey has failed to demonstrate that the court would have handed down a different sentence if the victim impact statement had been excised from the pre-sentence report.

Moreover, Bailey has failed to demonstrate how counsel's failure to object to the victim impact statement fell below objective standards of attorney conduct. Bailey does not assert that the information contained in the victim impact statement was erroneous or untruthful. Having already determined that the victim impact statement did not negatively affect Bailey's sentence, the court cannot discern any other reason why counsel should have objected to the victim impact statement. Accordingly, the court will deny claim one because Bailey has failed to satisfy either prong of the *Strickland* test.

---

[4]The court also noted that Bailey failed to exhibit much remorse "with regard to [her] victimized fellow employees." *Id.* at pp. 25-26. However, the court's focus in this respect was on Bailey's lack of remorse rather than on the victims' circumstances, as witnessed by the court first-hand when Bailey testified during Trala's criminal trial.

### 2. Claim two: counsel's failure to object to firearm adjustment

The court upwardly adjusted Bailey's offense level score for Count II a total of six-points due to the fact that her co-conspirator "otherwise used" a firearm during the course of the bank robbery. *See* U.S.S.G. 2B3.1. Bailey contends that she did not know Trala planned to use a gun during the bank robbery. Therefore, she argues that counsel performed deficiently by not objecting to the six-point upward adjustment to her offense level score.

The court will deny this claim because Bailey cannot satisfy either prong of the *Strickland* test. Pursuant to U.S.S.G. 1B1.3(a)(1)(B), Bailey is responsible for reasonably foreseeable acts of others taken in furtherance of joint criminal activity. Considering that the robbery in this case involved threatening or forcing at least one other employee to reveal his portion of the vault combination during daylight hours, it was reasonably foreseeable that Bailey's partner would use a gun. *See* U.S.S.G. 1B1.3 app. Note 2(b)(1)(getaway driver in armed robbery is accountable for injuries to teller during course of robbery.); *United States v. Dixon*, 982 F.2d 116, 119-21 (3d Cir. 1992)(co-conspirator's feigned use of gun during bank robbery attributable to defendant who planned robbery but was not present inside bank at time of robbery because it was reasonably foreseeable that a bank robbery occurring in broad daylight would require some credible threat of deadly force). Moreover, because the court found that Bailey was the "mastermind" behind the robbery, it was reasonable for defense counsel to believe that the court would reject any objection to the firearm adjustment on this ground. Accordingly, the court concludes that defense counsel did not perform ineffectively by failing to raise Bailey's lack of actual knowledge as an objection to the six-point firearm adjustment.

### 3. Claim three: counsel's failure to "effectively" present Bailey's role as a parent

In claim three, Bailey argues that counsel failed to adequately present her role as a parent to the court during sentencing because he did not present all the letters written on her behalf describing her role in the community and her role as a mother. After reviewing Bailey's submissions, the court concludes that Bailey has failed to satisfy both prongs of the *Strickland* test. First, defense counsel filed a motion for downward departure on Bailey's behalf which thoroughly explained her family situation. *See* (D.I. 151; D.I. 159, at 19.) Furthermore, during sentencing, counsel argued that Bailey was a "hard-working, ambitious, homemaker, mother, good citizen, decent person," who made a "fatal mistake." (D.I. 159, at 20.) Accordingly, even if counsel did not submit additional letters on Bailey's behalf when he presented his motion for downward departure due to family circumstances, the court concludes that counsel's decision was objectively reasonable.

As for *Strickland*'s second prong, Bailey cannot demonstrate prejudice stemming from counsel's actions in this respect. The court was completely aware of Bailey's family circumstances due to the testimony of Bailey and her husband at Trala's trial and the information presented in the pre-sentence report. The court denied Bailey's motion for downward departure after finding her concern for her children "less than compelling" and because Bailey's family situation did not differ "in any way from the number of countless number of defendants who face the same reality of having to leave their children as a result of their criminal actions." (D.I. 159, at 19-20.) In short, Bailey has failed to demonstrate that counsel's failure to submit additional letters regarding Bailey's role as a mother would have led to a different sentence. Accordingly,

the court will deny claim three.

### B. Claim Four: Violation of *Booker*

In her final claim, Bailey argues that the six-point firearm enhancement violated her Sixth Amendment rights because the "factors" for the enhancement were neither admitted nor found by a jury. Bailey filed the instant § 2255 motion in 2004, soon after the United States Supreme Court issued its decision *Blakely v. Washington*, 542 U.S. 296 (2004). Therefore, viewing the both the timing and wording of the claim, the court concludes that Bailey's Sixth Amendment claim was asserted pursuant to *Blakely*. *Blakely,* however, involved the application of state sentencing guidelines, and Bailey is a federal prisoner challenging the application of the federal sentencing guidelines. Consequently, the court will review claim four as if it was raised pursuant to *United States v. Booker,* 543 U.S. 220 (2005). *See Lloyd v. United States*, 407 F.3d 608, 611 (3d Cir. 2005).

Even this liberal construction of Bailey's Sixth Amendment fails to warrant relief. The Third Circuit Court of Appeals has held that "*Booker* does not apply retroactively to initial motions under § 2255 where the judgment was final as of January 12, 2005, the date *Booker* was issued." *Lloyd*, 407 F.3d at 616. The Third Circuit Court of Appeals affirmed Bailey's conviction and sentence on July 21, 2004, and because she did not file a petition for certiorari in the United States Supreme Court, her conviction became final at the end of October, 2004. *See Kapral v. United States*, 166 F.3d 565, 572 (3d Cir. 1999). Accordingly, the court will deny Bailey's final claim because *Booker* does not apply to her case.

### V. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether to issue a certificate of appealability. *See* Third

11

Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The court is dismissing Bailey's § 2255 motion after determining that her claims are meritless. The court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, Bailey has failed to make a substantial showing of the denial of a constitutional right, and the court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Bailey's 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence is dismissed. An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELISSA BAILEY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civ. A. No. 04-1459-GMS |
| ) | Cr. A. No. 00-23-GMS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued in this action today, IT IS HEREBY ORDERED that:

1. Petitioner Melissa Bailey's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is DISMISSED, and the relief requested therein is DENIED. (D.I. 212.)

2. A certificate of appealability will not issue for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

March 26, 2008
Wilmington, Delaware

_____
CHIEF, UNITED STATES DISTRICT JUDGE